**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

DYLAN JORDAN FLOYD,                    )
                                       )
                   Plaintiff,          )
                                       )
vs.                                    )    Case No. CIV-20-842-HE
                                       )
TURN KEY HEALTH, *et al.*,             )
                                       )
                   Defendants.         )

**SPECIAL REPORT OF REVIEW OF FACTUAL BASIS OF CLAIMS**
**ASSERTED PURSUANT TO 42 U.S.C. § 1983**

**INTRODUCTION**

Pursuant to this Court's Order requiring Special Report dated September 30, 2020 [Dkt. 7], this Special Report is being submitted in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  The undersigned has performed a review of the allegations set forth in Dylan Floyd's Civil Rights Complaint [Dkt. 1] as it relates to Logan County Detention Center ("LCDC" or "Jail") and any Logan County official or employee, with respect to the facts and circumstances, any potential remedial measures and any prior related complaints and has ascertained and determined the following:

**SPECIAL REPORT**

Plaintiff Dylan Floyd filed his original pro se Civil Rights Complaint on August 21, 2020 naming as Defendants "Turn Key Healthcare," "Damon Devereaux," "Randy Lester" and "Leandra James."  [Dkt. 1].  In his Complaint, Mr. Floyd alleged one (1) cause of action; that he was being denied access to

medical care subjecting him to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  In an Order entered September 30, 2020 [Dkt. 7], the Court ordered officials responsible for the operation of the Logan County Detention Center to complete a written Special Report and ordered Mr. Floyd to complete service on each of the named Defendants.  Defendants Damon Devereaux, Randy Lester, Leandra James and Turn Key Health were all served on October 20, 2020. [Dkt. 11].

Mr. Floyd's Complaint [Dkt. 1] asserts a claim for denial of access to medical care in violation of his Eighth and Fourteenth Amendment rights, in particular, alleging a denial or delay in necessary dental care.  [Dkt. 1, Claim I]. Mr. Floyd is currently incarcerated in the Logan County Detention Center.  He has been incarcerated at the LCDC since June 10, 2020 following his arrest on a charge filed in Logan County District Court of "Rape in the First Degree."  (Ex. 1, Booking Sheet for Dylan Floyd; Ex. 7, Declaration of Randy Lester).  On August 11, 2020, Mr. Floyd was bound over for trial by Logan County Special District Judge Susan Worthington on a charge "Rape in the First Degree."  (Ex. 3, Docket Sheet for *State of Oklahoma v. Dylan Floyd,* CF-2020-109).  As of the filing of this Special Report, Mr. Floyd remains incarcerated in the Logan County Detention Center as a pretrial detainee. (Ex. 4, Declaration of Logan County Sheriff Damon Devereaux).

The Logan County Detention Center serves as the Logan County Jail.  The LCDC was built by the Logan County Jail Trust Authority and transferred by

Warranty Deed to the Logan County Board of County Commissioners in 2015. (Ex. 5, Deed to Logan County Detention Center; Ex. 6, Minutes of the April 30, 2015 Regular Meeting of the Logan County Jail Authority). The Logan County Sheriff is solely responsible for the operations of the Jail.  (Ex. 4, Declaration of Logan County Sheriff Damon Devereaux).

Damon Devereaux has served as Sheriff of Logan County since January 2017.  While he is responsible for the operation of the Logan County Detention Center, he does not generally become involved in the day-to-day operations of the Jail. (Ex. 4, Declaration of Damon Devereaux).  The direct responsibility for the operation of the Jail falls to the LCDC Jail Administrator. The Jail Administrator throughout Mr. Floyd's incarceration at the LCDC has been and still is Randy Lester.  (Ex. 7, Declaration of Randy Lester).  Leandra James is and has been at all times relevant to Mr. Floyd's Complaint the Assistant Jail Administrator. (Ex. 8, Declaration of Leandra James). The Declaration by Randy Lester verifying the contents of the Special Report and the attachments thereto is attached as Exhibit 20.   The Declaration of Authorship submitted by Logan County Sheriff Damon Devereaux is attached as Exhibit 21.

## CAUSES OF ACTION
## AND INVESTIGATIVE FINDINGS

Mr. Floyd's allegations as to the actions or inactions of staff of the Logan County Detention Center, as alleged in his Complaint under the heading "Claims"

[Dkt. 1] and as summarized below have been investigated.[1]  The results of the investigation, which revealed no wrongdoing or any violation of any of Mr. Floyd's rights by any individually named Defendants or any other Logan County Detention Center staff member, follow the allegations.

## **LIST OF EXHIBITS**

The following is a list of Exhibits to the Special Report:

Exhibit 1 – Booking Sheet for Dylan Floyd

Exhibit 2 – Inmate Cell Movement Report

Exhibit 3 – Docket Sheet for State of Oklahoma v. Dylan Floyd, CF-2019-45 (Logan Co.).

Exhibit 4 – Declaration of Logan County Sheriff Damon Devereaux

Exhibit 5 – Deed to Logan County Detention Center

Exhibit 6 – Minutes of the April 30, 2015 Regular Meeting of the Logan County Jail Authority

Exhibit 7 – Declaration of Logan County Detention Center Jail Administrator Randy Lester

Exhibit 8 – Declaration of Logan County Detention Center Assistant Jail Administrator Leandra James

Exhibit 9 – Inmate's Booking Medical Questionnaire **(filed under seal pursuant to Court's Order [Dkt. 17])**

---

[1] This Special Report addresses the allegations of the Complaint, as listed under the heading "Claims" and as understood and interpreted by the undersigned with the assistance of counsel. [Dkt. 1, p. 6] (References to page numbers of the Complaint are referencing the ECF page numbers). If the Court finds that the interpretation is different from the Court's or results in the missing or misunderstanding of some allegation, the undersigned would respectfully request the Court advise the author of those differences and permit the author to further investigate and address the allegations as interpreted by the Court.

Exhibit 10 –   LCDC Inmate Handbook

Exhibit 11 –   LCDC Policy No. 3-04, Inmate Request to Staff **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 12 –   Turn Key Health Clinics Contract for LCDC

Exhibit 13 –   LCDC Policy No. 2-06, Inmate Grievances **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 14 –   LCDC Policy No. 2-08, Inmate Dress In **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 15 –   LCDC Policy No. 2-04, Medical Services/Medication Policy **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 16 –   Turn Key Medical Records for Dylan Floyd **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 17 –   LCDC Inmate Medical File for Dylan Floyd **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 18 –   Relevant Requests to Staff

Exhibit 19 –   Declaration of Malachi Martin **(filed under seal pursuant to Court's Order [Dkt. 17])**

Exhibit 20 –   Declaration of Randy Lester regarding Special Report and Records Certification

Exhibit 21 –   Declaration of Damon Devereaux regarding Special Report

Exhibit 22 –   Turn Key Medical Records for Dylan Floyd, pt 2 **(filed under seal pursuant to Court's Order [Dkt. 17])**

## **ALLEGATIONS:**

Mr. Floyd identifies denial of access to medical care, specifically dental care, in violation of his Eighth and Fourteenth Amendment rights as his only cause of action beginning under the "Claims" section of his Complaint. [Dkt. 1, p.

6]. This specifically delineated cause of action is investigated below. (*See also* Footnote No. 1).

## **INVESTIGATIVE FINDINGS:**

### **General Findings:**

Damon Devereaux has been the Logan County Sheriff at all times related to Mr. Floyd's allegations and continues to serve as the duly elected Sheriff, having served as Sheriff since January 2017.  As Sheriff, his duties include the supervision of all Deputies and Sheriff's Office staff as well as enacting the policies, procedures and practices of the Logan County Sheriff's Office.  (Ex. 4, Declaration of Sheriff Damon Devereaux).

The Logan County Detention Center serves as the Logan County Jail. (Ex. 4, Declaration of Sheriff Damon Devereaux). The LCDC was built by the Logan County Jail Trust Authority and was transferred by Warranty Deed to the Logan County Board of County Commissioners in 2015. (Ex. 5, Deed to Logan County Detention Center; Ex. 6, Minutes of the April 30, 2015 Regular Meeting of the Logan County Jail Authority). The Logan County Sheriff is responsible for the operations of the Jail.  (Ex. 4, Declaration of Sheriff Damon Devereaux).

Defendant Devereaux, as Sheriff, is responsible for supervising the overall operation of the Logan County Detention Center and its staff. He is also responsible for the policies, procedures and practices of the Logan County Detention Center. No policy can be approved, changed or implemented without

the approval of Sheriff Devereaux.   (Ex. 4, Declaration of Sheriff Damon Devereaux).

While Sheriff Devereaux is responsible for the operation of the LCDC, he does not generally become involved in its day-to-day operations, unless jail staff advises him of an issue or problem which needs his review and action. (Ex. 4, Declaration of Sheriff Damon Devereaux). The responsibility for the daily operation of the Detention Center falls to the LCDC Jail Administrator, who is and has been at all times relevant to the allegations contained in Mr. Floyd's Complaint, Defendant Randy Lester.  (Ex. 7, Declaration of Randy Lester). As the LCDC Jail Administrator, Mr. Lester is also responsible for maintaining the records of the LCDC. (Ex. 7, Declaration of Randy Lester). Defendant Leandra James is employed as the Assistant Jail Administrator and has been employed as such since December of 2017. (Ex. 8, Declaration of Leandra James).

Medical staffing and administration at the Logan County Detention Center is contracted for and provided by a third-party contractor, Turn Key Health Clinics, LLC. (Ex. 12, Turn Key Health Clinics Contract for Logan County Detention Center; Ex. 4, Declaration of Sheriff Damon Devereaux). Medical staff employed by Turn Key Health who have also provided medical services to Mr. Floyd at the LCDC include Malachi Martin, APRN-NP; Pashen Bennett, LPN; Debra Stroud, LPN; Toni Burgert, LPN; and Tina Hunt, LPN. (Ex. 16, Turn Key Medical Records for Dylan Floyd; Ex. 17, LCDC Inmate Medical File for Dylan Floyd; Ex. 22, Turn Key Medical Records for Dylan Floyd, pt. 2). Mr. Malachi is

present in the Jail on a weekly basis for a provider clinic where he sees inmates of the LCDC. He is also available by phone for medical emergencies and consultations. (Ex. 7, Declaration of Randy Lester). None of the individually sued Defendants (Sheriff Devereaux, Randy Lester, and Leandra James) are aware of any Turn Key Health employee at the Logan County Detention Center having ever refused to treat an inmate when it was medically necessary, having provided inadequate or inappropriate care to an inmate, and/or of any Turn Key Health, LLC policy which authorizes the non-treatment, inadequate treatment, and/or inappropriate medical treatment of any inmate at the Logan County Detention Center. (Ex. 4, Declaration of Sheriff Damon Devereaux; Ex. 7, Declaration of Randy Lester; Ex. 8, Declaration of Leandra James).

When Mr. Floyd was booked into the Logan County Detention Center on June 10, 2020, per LCDC policy, he was showered, given a clean jail jumpsuit, advised of the jail rules, and then placed in Cell J-104. (Ex. 1, Booking Sheet for Dylan Floyd; Ex. 2, Inmate Cell Movement Report; Ex. 14, Policy No. 2-08, Inmate Dress In). Mr. Floyd was also given the opportunity to make a phone call but declined to do so. (Ex. 1, Booking Sheet for Dylan Floyd). While incarcerated at LCDC, Mr. Floyd has had access to the Inmate Handbook at all times via a video kiosk located in his pod as well as a tablet device which was issued to him. (Ex. 7, Declaration of Randy Lester). Inmates are advised at book-in how to access the inmate handbook via both the kiosk and the tablet. (Ex. 7, Declaration of Randy Lester). The LCDC Inmate Handbook contains instructions for how an

8

inmate may submit Requests to Staff, Offender Grievance Report Forms, and obtain medical attention. (Ex. 7, Declaration of Randy Lester; Ex. 10, LCDC Inmate Handbook).

Any inmate of the LCDC may file a Request to Staff to provide written notice of a complaint, request or problem. (Ex. 11, Inmate Request to Staff Policy No. 3-04). The procedure for filing a Request to Staff is first for the inmate to attempt to resolve the issue by speaking with the responsible authority or another staff member at the LCDC. (Ex. 10, Inmate Handbook; Ex. 11, Inmate Request to Staff Policy No. 3-04). After speaking with a staff member, the inmate, if the issue or need is not resolved, may submit a Request to Staff form and give it to any LCDC employee who will then carry it to the Jail Administrator or his/her designee. Once received, the Jail Administrator, or his designee, will investigate the Request to Staff and if the Request is found to be valid, they will, if possible, resolve the issue within a reasonable time. (Ex. 11, Inmate Request to Staff Policy No. 3-04). All Requests to Staff and any subsequent responses are placed in the offender's file. (Ex. 11, Inmate Request to Staff Policy No. 3-04).  Requests for medical attention are submitted to Turn Key medical staff at the LCDC.

The LCDC also has a formal grievance procedure for inmates to address complaints that are not resolved through the informal process.  In much the same way as Requests to Staff, LCDC inmates may submit Offender Grievance Report Forms. (Ex. 13, Inmate Grievances Policy No. 2-06). There are two types of grievances: (1) informal (where an inmate attempts to resolve the issue either

orally or through a Request to Staff) and (2) a formal written grievance. Formal written grievances are reserved for after an inmate has attempted to resolve their issue through two answered Requests to Staff. (Ex. 10, Inmate Handbook). A formal Offender Grievance may address any issue regarding any policy, procedure, condition of confinement, action of an employee, or incidents that personally affect the inmate making the complaint. (Ex. 10, Inmate Handbook). Formal Offender Grievances must clearly set out all facts and requests pertaining to the grievance on the Offender Grievance Report Form. Once done the Offender Grievance Report Form can be provided to any LCDC staff who will then forward it to the Jail Administrator for review and investigation. Regardless of whether the grievance is deemed to be with or without merit, an inmate receives a written response to their grievance. (Ex. 13, Inmate Grievance Policy No. 2-06). For Requests to Staff or Offender Grievance Report Forms concerning medical issues Turn Key Health staff is consulted prior to detention staff providing a written response to the inmate. (Ex. 10, Inmate Handbook; Ex. 7, Declaration of Randy Lester).

Inmates at the LCDC are provided with access to appropriate medical care for serious medical, dental, and mental health care needs. (Ex. 15, Medical Services/Medication Policy No. 2-04; Ex. 12, Turn Key Health Contract). All medical, mental health, and dental assessments, judgments, and/or diagnoses are provided by qualified healthcare professionals. (Ex. 15, Medical Services/Medication Policy No. 2-04; Ex. 12, Turn Key Health Contract). Any

inmate who believes they require medical, dental, or mental health services of a non-emergency nature may complete a Sick Call Request form and give it to any LCDC staff member who will then forward it to medical staff to arrange for an appointment. (Ex. 10, Inmate Handbook; Ex. 15, Medical Services/Medication Policy No. 2-04). Alternatively, the inmate may give a Sick Call Request directly to medical staff as well. Once this is done, the inmate will then be seen by medical staff within 24 hours, as available. (Ex. 15, Medical Services/Medication Policy No. 2-04). If medical staff deems it necessary, they will schedule the inmate for a provider clinic appointment where the inmate will see a doctor or other appropriate medical personnel. (Ex. 12, Turn Key Health Contract). This process of scheduling the inmate for provider clinic appointments occurs at the sole discretion of medical personnel.  (Ex. 7, Declaration of Randy Lester). The LCDC contracts with Turn Key Health Clinics to provide medical staffing and administration. This includes care for dental services deemed medically necessary by the Turn Key medical director. (Ex. 12, Turn Key Health Contract). There is no additional cost for dental services to the Jail as those costs are included with the overall costs of all other medically necessary medical treatment. (Ex. 12, Turn Key Health Contract). Staff at LCDC has no oversight or control over whether care is deemed medically necessary or what care an inmate receives. (Ex. 7, Declaration of Randy Lester; Ex. 4, Declaration of Damon Devereaux; Ex. 12, Turn Key Health Contract).

As part of his booking process on June 10, 2020, Mr. Floyd underwent an inmate medical questionnaire completed by LCDC staff. (Ex. 9, Inmate's Booking Medical Questionnaire). During this medical questionnaire he responded in the affirmative when asked about the following medical issues:

| No | Category | Description | Answer | Explanation |
|----|----------|-------------|--------|-------------|
| 27 | Do you have / Ever Had | Psychiatric Disorder | YES | Bi-polar // Depression |
| 48 | General Question | PREA – Has been arrested or charged for a violent offense – currently or previously | YES | ASSAULT ON A POLICE OFFICER |
| 50 | General Question | PREA – has previously been placed in Disciplinary / Segregation Lockdown | YES | CLAIMS YES // FIGHTING |

(Ex. 9, Inmate's Booking Medical Questionnaire)

Mr. Floyd did not identify any other medical issues during his booking procedure. Mr. Floyd also did not indicate that he is taking any medication or receiving any treatment other than the above listed responses. (Ex. 9, Inmate's Booking Medical Questionnaire). As part of the booking process, the inmate's medical questionnaire is provided to medical staff at the Jail who then generally completes a medical screening within 48 hours. (Ex. 7, Declaration of Randy Lester; Ex. 12, Turn Key Health Contract).

On July 22, 2020, Mr. Floyd submitted a Sick Call Request form stating that that he was attempting to seek administrative relief, that he was in acute dental pain, and was requesting an appointment with a dentist. (Ex. 16, Turn Key Medical File for Dylan Floyd, p. 33). Nurse Pashen Bennett received this Request on July 22, 2020 at approximately 5:10 p.m. and schedules Mr. Floyd for a sick call visit. (Ex. 16, Turn Key Medical File for Dylan Floyd, p. 33). On July 25, 2020, Mr. Floyd is seen by Nurse Debra Stroud who notes that his lower right wisdom tooth is coming in. The surrounding gum is also noted to be red and swollen. (Ex. 16, Turn Key Medical File for Dylan Floyd, p. 33).   Mr. Floyd refused Acetaminophen and Ibuprofen but did accept a 7-day prescription for topical Benzocaine. (Ex. 16, Turn Key Medical File for Dylan Floyd, p. 33).

On July 26, 2020, Mr. Floyd submitted a Request to Staff stating that he was seeking administrative relief prior to filing a civil rights suit for pain associated with his wisdom teeth. (Ex. 18, Relevant Requests to Staff). On July 30, 2020, Leandra James responded to Mr. Floyd's July 26, 2020, Request to Staff stating that Mr. Floyd had only submitted one Sick Call Request form and that he refused the medication that was offered to him. (Ex. 18, Relevant Requests to Staff).

On August 1, 2020, Mr. Floyd submitted a Request to Staff stating that he was seeking administrative relief prior to filing a civil rights suit for pain associated with his wisdom teeth. (Ex. 18, Relevant Requests to Staff). He additionally wrote that he was refusing medication because he believed it would

be "ineffective and unnecessary." (Ex. 18, Relevant Requests to Staff). On August 3, 2020, Jail Administrator Randy Lester responded to Mr. Floyd's August 1, 2020 Request to Staff. Mr. Lester stated that Mr. Floyd was not being denied medical treatment but rather he was refusing the treatment offered by Turn Key Health. (Ex. 18, Relevant Requests to Staff). Mr. Lester also informed Mr. Floyd that if he desired treatment other than that which was deemed medically necessary by Turn Key Health, and could pay for it himself, the jail would arrange to transport him to and from a dentist appointment. (Ex. 18, Relevant Requests to Staff). Prior to providing this response, Mr. Lester consulted Turn Key Staff who informed him that Mr. Floyd was not being denied medical treatment but rather had refused medical care offered to treat his dental issues. (Ex. 7, Declaration of Randy Lester; Ex. 12, Turn Key Health Contract).  Also on August 3, 2020, Mr. Floyd submitted a Request to Staff stating he was attempting to seek administrative relief prior to filing a civil rights suit on the basis that he was not adequately being protected from COVID-19. (Ex. 18, Relevant Requests to Staff). Jail Administrator Randy Lester responded to this Request to Staff in writing on August 24, 2020, informing Mr. Floyd that everyone in the jail was tested on August 18, 2020 and was negative. Additionally, he informed Mr. Floyd that the Logan County Detention Center was following CDC guidelines for the screening of incoming inmates and cleaning procedures. (Ex. 18, Relevant Requests to Staff).

On August 6, 2020, Mr. Floyd submitted an Offender Grievance Report Form stating that he was seeking an emergency dental visit. (Ex. 18, Relevant Requests to Staff). This Grievance was responded to by Jail Administrator Randy Lester who advised Mr. Floyd would be sent to the dentist if his condition worsened. (Ex. 18, Relevant Requests to Staff). Prior to providing this response, Mr. Lester consulted with Turn Key Staff to insure that Mr. Floyd was being seen for his dental issues and that the care prescribed was reasonable and proper. (Ex. 7, Declaration of Randy Lester). On August 13, 2020, Mr. Floyd completed a Sick Call Request Form stating that he was in pain and was requesting to see a dentist. (Ex. 16, Turn Key Medical Records for Dylan Floyd, p. 27). Nurse Pashen Bennett received this Sick Call Request on August 14, 2020. (Ex. 16, Turn Key Medical Records for Dylan Floyd, p. 27). That same day, in response to this Sick Call Request Form, Nurse Bennett scheduled Mr. Floyd for the next available sick call visit. On August 15, 2020, Mr. Floyd was seen by Nurse Bennett for a toothache. Nurse Bennett noted that Mr. Floyd was in mild distress but she did not observe any evidence of the swelling or redness of Mr. Floyd's gum which had been observed at his July 25, 2020 sick call visit.  (Ex. 16, Turn Key Medical Records for Dylan Floyd, pp. 26, 33). Mr. Floyd is prescribed 1000 mg of Acetaminophen twice a day for 90 days to alleviate his pain. (Ex. 16, Turn Key Medical Records for Dylan Floyd, p. 26).

On August 18, 2020, Mr. Floyd was tested for COVID-19 via nasopharyngeal swab. The result was negative. (Ex. 16, Turn Key Medical

Records, p. 22). On August 20, 2020, Assistant Jail Administrator Leandra James responded to a Request to Staff from Mr. Floyd informing him that she was unable to make copies for him because he had a negative commissary account balance. (Ex. 18, Relevant Requests to Staff). On August 21, 2020, Mr. Floyd submitted a Request to Staff stating that he was seeking administrative relief prior to filing a grievance on the basis that he was being denied access to the courts. (Ex. 18, Relevant Requests to Staff). This Request was responded to three days later on August 24, 2020 by Lt. Matthew Sumner who wrote that he spoke to Mr. Floyd in the administrative office and reminded him of his instructions to complete a Request to Staff to his attorney, John Lopez, for assistance. (Ex. 18, Relevant Requests to Staff).

Mr. Floyd has been offered pain medication for his complained of dental pain since his first medical appointment on August 15, 2020. He initially refused this medication. However, since accepting it, he has taken it only intermittently. (Ex. 16, Turn Key Medical Records, pp. 25-26, 34; Ex. 19, Declaration of Malachi Martin, ¶¶ 7-9.). After accepting a prescription of Acetaminophen on August 15, 2020 and until October 18, 2020, Mr. Floyd has refused his medication a total twenty-four (24) times. (Ex. 16, Turn Key Medical Records, pp. 2-21, 34). Additionally, When Mr. Floyd was given a seven day prescription of topical Benzocaine, he refused it a total of four (4) times over a seven day period. (Ex. 16, Turn Key Medical Records, p. 28). Mr. Floyd's Tylenol prescription was continued for another ninety (90) days from November 15, 2020 until March 15,

2021. (Ex. 22, Turn Key Records, pt 2, pp. 2-3). Since November 15, 2020 and until November 27, 2020, Mr. Floyd failed to take or refused his pain medication a total of nine (9) times over this 12 day period. (Ex. 22, Turn Key Records, pt 2, p. 2).

On December 11, 2020, Mr. Floyd submitted a Sick Call Request stating that a tooth towards the back of his mouth had started to decay and a portion of it had broken off. (Ex. 17, LCDC Inmate Medical File for Dylan Floyd).  Turn Key Medical Staff respond to this Request on December 12, 2020 by stating that Mr. Floyd was offered pain medication that morning and he refused it. (Ex. 17, LCDC Inmate Medical File for Dylan Floyd). Medical staff goes on to state that Mr. Floyd needed to follow the current regime of pain medication in order for staff to evaluate and adjust Mr. Floyd's pain medication. (Ex. 17, LCDC Inmate Medical File for Dylan Floyd).

On December 19, 2020, Mr. Floyd submitted a Sick Call Request stating that the "upper right gum lining" in his mouth is receding "for no apparent reason." (Ex. 17, LCDC Inmate Medical File for Dylan Floyd). He stated that he brushed his teeth daily and that the symptoms he was experiencing are the symptoms of someone who does not take care of teeth. He also compared his teeth to that of a user of methamphetamines which he stated he has never done. (Ex. 17, LCDC Inmate Medical File for Dylan Floyd). Each time Mr. Floyd did not take his medication, the medical personnel responsible for administering the medication circled her initials on the Medication Administration Record (MAR).

17

(Ex. 16, Turn Key Medical Records, pp. 9, 20, 28; Ex. 19, Declaration of Malachi Martin, ¶ 13).

## <u>CAUSE OF ACTION NO. 1</u>

In Mr. Floyd's Complaint against Turn Key Health, Sheriff Damon Devereaux and LCDC staff, he complains that he was denied access to medical treatment, specifically a dentist, in violation of the Eighth and Fourteenth Amendments. [Dkt. 1, p. 6]. Mr. Floyd acknowledges in his Complaint that he has seen medical personnel regarding his complained of dental issues, been offered several treatments including pain medication by medical staff at the LCDC, and refused those treatments because he deemed them "inadequate" to address his dental issues. [Dkt. 1, p. 8].

Investigative findings revealed that Mr. Floyd has not been denied medical care for his dental condition. On the contrary, the records show that Mr. Floyd has received a consistent course of treatment for his dental complaints. He has had prompt appointments with medical staff each time he has submitted a request for medical treatment as well. However, Mr. Floyd considers the treatment he has been offered to be "inadequate" and "unnecessary." [Dkt. 1, p. 8]. Mr. Floyd never specifies why he believes the treatment he is being offered is inadequate and merely states that he wishes to see a dentist. [Dkt. 1, p. 8]. At all times during his incarceration, Mr. Floyd has had the opportunity to receive off-site dental treatment at his own expense. Mr. Floyd's dental condition does not pose any risk of serious harm which would warrant any further medical treatment

18

beyond what is currently being offered at the LCDC. He has also regularly refused to take pain medication prescribed to him to treat the discomfort he is experiencing as a result of his dental issues.

An examination of Mr. Floyd's medical assessments and treatment shows that the care he has received has been prompt and adequate to his condition. In Mr. Floyd's very first Sick Call Request form on July 22, 2020, he begins by stating that he was "attempting to seek administrative relief" only then adding that he was in acute dental pain and was requesting an appointment with a dentist. (Ex. 16, Turn Key Medical Records, p. 33). He was promptly seen by Nurse Debra Stroud on July 25, 2020, who notes that his lower right wisdom tooth is coming in. According to the provider note, this issue arose approximately one week prior to this medical appointment. (Ex. 16, Turn Key Medical Records, p. 34). His surrounding gum was also noted to be red and swollen. She did not note any signs of infection though. Mr. Floyd refused both Acetaminophen and Ibuprofen for pain but did accept a prescription for topical Benzocaine. (Ex. 16, Turn Key Medical Records, p. 34). At the time of his assessment, the nurse practitioner determined Mr. Floyd's dental condition did not warrant any further treatment beyond pain medication that had already been prescribed.

However, this did not conclude the treatment Mr. Floyd received regarding his dental issue. He was seen again for his dental issues approximately three weeks later on August 15, 2020. (Ex. 16, Turn Key Medical Records, p. 26). During this provider visit, Nurse Bennett again noted that his lower right wisdom

tooth was coming in. She charted that Mr. Floyd no longer had any redness or swelling around the affected tooth and that he was exhibiting mild distress. (Ex. 16, Turn Key Medical Records, p. 26). Mr. Floyd was prescribed 1000 milligrams of Acetaminophen twice a day for ninety (90) days and told to follow-up with medical staff if there was no improvement. (Ex. 16, Turn Key Medical Records, p. 26).

From August 15, 2020 until October 18, 2020, Mr. Floyd refused his pain medication a total of 24 times. (Ex. 16, Turn Key Medical Records, pp. 2-21). Mr. Floyd's refusal of pain medication is indicative to medical staff that his dental pain was not severe or debilitating nor was he at imminent risk of harm. (Ex. 19, Declaration of Malachi Martin, ¶ 9).

Consistent with Turn Key practices, each time Mr. Floyd advised the medication pass personnel that he did not desire to take his prescribed medication, that medical personnel member circled her initials on the MAR. (Ex. 16, Turn Key Medical Records, pp. 9, 20, 28; Ex. 19, Declaration of Malachi Martin, ¶ 13). Mr. Floyd has been continuously offered pain medication for dental pain, but he has only sporadically taken such medication. (Ex. 16, Turn Key Medical Records, pp. 2-25; 34; Ex. 19, Declaration of Malachi Martin, ¶¶ 7-9). With regard to his current condition, Mr. Floyd continues to refuse pain medication at times. (Ex. 16, Turn Key Medical Records, pp. 2-25; 34; Ex. 19, Declaration of Malachi Martin, ¶ 10). Mr. Floyd's periodic refusal of pain medication is an indication that Mr. Floyd's dental pain is not severe enough to

make further dental workup medically necessary as Mr. Floyd's dental condition does not pose any imminent risk of harm. (Ex. 19, Declaration of Malachi Martin, ¶ 9). However, if Mr. Floyd desires dental work that has not been deemed medically necessary by medical staff, he always has had – and continues to have – the option to pay for his own dental visit.  The facility has informed him numerous times that they will schedule and transport him if he is willing to pay for such treatment which is not warranted by his clinical presentation. (Ex. 18, Relevant Requests to Staff).

All forms for requested medical are attached hereto and all appear to have been addressed appropriately and promptly. Mr. Floyd has not been denied any necessary medical care or treatment while at the LCDC. In fact, he was provided access to four nurses and a nurse practitioner and a medical request procedure (which he utilized).  He was given medications and all of his Requests to Staff, Offender Grievance Report forms, and Sick Call Request forms were promptly responded to either by the nurse, the doctor, the Jail Administrator, or LCDC staff. The policies and procedures within the Jail provide for all medically necessary treatment that an inmate requires as well as the opportunity to secure non-medically necessary treatment at the inmate's own expense. Per the medical professionals, medical treatment to Mr. Floyd's wisdom tooth would be elective and non-emergent in nature. In short, Mr. Floyd's medical needs were addressed timely, appropriately and pursuant to policy and procedure at the Jail.

## DYLAN FLOYD'S ATTEMPTS TO
## EXHAUST ADMINISTRATIVE REMEDIES

The Logan County Detention Center has had in place during the entirety of Mr. Floyd's incarceration a policy regarding Offender Grievances and Request to Staff which sets forth the inmate grievance process. The LCDC's inmate grievance procedure exists for the purpose of allowing inmates a system to seek resolution on issues affecting their incarceration. (Ex. 13, Logan County Detention Center Policy No. 2-06, Inmate Grievances). An inmate may request a paper form and submit a written grievance on that form by giving the form to any jail staff. Under the Grievance Procedure, a proper basis for submitting a grievance includes an alleged violation of the inmate's civil, constitutional or statutory rights, an alleged prohibited or criminal act by facility staff, and/or unjust denial or restriction of prisoner privileges.   (Ex. 4, Declaration of Damon Devereaux). Prior to submitting an Offender Grievance form, a prisoner at the LCDC must submit and receive answers to two Requests to Staff concerning the subject matter of the grievance. (Ex. 10, LCDC Inmate Handbook).

Mr. Floyd did submit both Requests to Staff and an Offender Grievance Report form as required by LCDC policy in an attempt obtain his desired course of medical treatment. (Ex. 18, Relevant Requests to Staff). Defendants acknowledge Mr. Floyd has exhausted his administrative remedies with regard to the issue at hand concerning his dental care as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  At the time of the Complaint, and still at the time of the filing of this Special Report, Mr. Floyd was, and remains, incarcerated in

the Logan County Detention Center awaiting trial or disposition of his felony criminal charge.

## POTENTIAL REMEDIAL MEASURES

In considering whether any remedial measures or actions can or should be taken by the Logan County Detention Center in response to Mr. Floyd's Complaint, the record reveals that there are no actions which can or should be undertaken by LCDC, these Defendants or any staff of the LCDC, nor any action which should be taken for Mr. Floyd. Inmate Floyd currently remains incarcerated in the LCDC awaiting disposition of his pending felony criminal charges.

There is no action to be taken by the LCDC as the investigation reveals that the policies and procedures of the LCDC are sufficient to ensure that all inmates receive all appropriate and necessary medical treatment.  Additionally, there is no evidence supporting any of the allegations by Mr. Floyd that he was denied medical treatment.  The actions of the Defendants, Turn Key Health, and the LCDC were reasonable, proper and lawful.  Accordingly, there is no action that should be taken by the LCDC or these Defendants to resolve the subject matter of Mr. Floyd's Complaint.

## PRIOR RELATED COMPLAINTS

A review of the records indicates that there are two similar Complaints pending in this Court that have similar legal issues and factual allegations with this Complaint. These Complaints are: *Charles Bowlds v. Turn Key Health, et al.,* Case No. CIV-19-726-SLP, before United States District Judge Scott L. Palk and

23

*Charles Stewart v. Turn Key Health, et al.*, Case No. CIV-20-957-D before United States District Judge Timothy D. DeGiusti.   There are no related or similar Complaints from Mr. Floyd.

## **SUMMARY AND CONCLUSION**

In reviewing the subject matter and allegations contained in the Civil Rights Complaint on file herein, the undersigned believes Mr. Floyd's allegations are without merit and no action should be taken by the Defendants, the Logan County Detention Center, or its staff at this time. The findings and determinations herein are based upon the undersigned's knowledge and review of the subject matter, jail records, court records and information obtained from other Logan County personnel. Based upon this information and records, jail staff acted reasonably under the circumstances as known or observed by staff.  There is no evidence of wrongdoing by Defendants or LCDC staff.   Mr. Floyd's allegations are without factual support.

The undersigned is also not aware of any judicial or administrative findings of any constitutional violations in conduct or policies resulting from complaints similar to those alleged in Mr. Floyd's Complaint.

The findings and determinations herein are based upon the undersigned's understanding and interpretation of Mr. Floyd's Complaint and review of the subject matter, court, records, jail records and information obtained by and from other Logan County personnel.  Based upon this information and record, Plaintiff Dylan Floyd's allegations and claims are without factual support.

24

Respectfully submitted,

Damon Devereaux
Logan County Sheriff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

> Alexandra G. Ah Loy
> General Counsel
> Turn Key Health Clinics, LLC
> 19 N.E. 50th Street
> Oklahoma City, OK  73105

I further certify that on December 21, 2020, I served the attached document by U.S. Priority Mail, postage prepaid, to the following who is not registered participant of the ECF System:

> Dylan Floyd, #115759
> Logan County Detention Center
> 216 S. Broad
> Guthrie, OK  73044
> ***Pro Se Plaintiff***

s/W.R. Moon Jr.
W.R. Moon Jr.
